UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-414-H

ALLIANCE COST CONTAINMENT, LLC
f/k/a STARMONT WILLOW, LLC                                                                    PLAINTIFF

V.

LEE FERRY
and
NATIONAL COST CONTAINMENT, LLC
and
BRETT COLLIER
and
COLLIER TIDMORE & ASSOCIATES, INC.                                                DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Alliance Cost Containment, LLC ("ACC") has brought a fifteen (15) count complaint against Lee Ferry ("Ferry"), National Cost Containment, LLC ("NCC"), Brett Collier ("Collier"), and Collier Tidmore & Associates, Inc.'s ("CTA") (collectively "Defendants"). Defendants have now moved to dismiss and compel arbitration. For the reasons briefly stated, the Court will deny both requests for now.

The Federal Arbitration Act ("FAA") provides that agreements to arbitrate are enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The first task of a court asked to compel arbitration of a dispute is to determine whether and to what extent the parties agreed to arbitrate that dispute. *See Sprowls v. Oakwood Mobile Homes, Inc.*, CIV. A. 3:99-CV-756H, 2000 WL 33975578 (W.D. Ky. May 12, 2000) *citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Courts use the normal rules of contractual construction to interpret the language of

arbitration provisions and determining the intent of the parties. Generally, "the issue of arbitrability may only be referred to the arbitrator if there is *clear and unmistakable evidence* from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2nd Cir. 2002) (emphasis in original).

The paragraph in the Franchise Agreements relied upon by Defendants' motion, paragraph 24, expressly excludes many of the claims brought in this litigation as it states:

> [t]he provisions of this Section 24 will not apply to any dispute relating to unpaid fees or cash payments for goods or services or to any dispute relating to the use or protection of any trade name, service mark, trademark, trade dress, or trade secret, including (without limitation) the right to apply to any court of competent jurisdiction for appropriate injunctive relief for the infringement of any trade name, service mark, trademark, trade dress, or trade secret.

Here, the litigation focuses upon Defendants' wrongful retention and misuse of ACC's trade secrets and their trademark violations (which are excluded as "any dispute relating to the use or protection of any trade name, service mark, trademark, trade dress, or trade secret"), as well as the unjust enrichment from sales. Consequently, it would appear that most of ACC's claims are likely specifically excluded from arbitration trademark issues as well as "unpaid fees or cash payments for goods or services."

This result is not surprising considering that the Franchise Agreements clearly suggest that the parties did not intend that all disputes would be subject to arbitration. Paragraph 36 of the Agreement states that venue will be proper in the "federal and state courts for the county in which we then have our principal place of business will constitute the proper, sole and exclusive venue and forum for any action arising out of or in any way related to this Agreement." ACC

appears to have complied with this provision in filing litigation in the Western District of Kentucky, the district in which ACC's Louisville, Kentucky principal place of business is located.

Moreover, NCC is not a signatory or beneficiary to any Franchise Agreement with ACC. ACC's only claims in the complaint not brought against NCC include breach of contract (Counts I and II), fraudulent misrepresentation of Collier (Count XIV), and unjust enrichment (Count XV). Even if the other ACC's claims were to be excluded, all its other claims against NCC would be adjudicated here. As a general rule, non-signatories cannot compel signatories to arbitrate. *See AT&T Techs. v. Communications Workers of Am.,* 475 U.S. 643, 648 (1986).

This Court will deny Defendants' motion because (1) the parties to the arbitration provision, Ferry, Collier and CTA, expressly excluded the certain claims from arbitration; and (2) NCC, a non-signatory to the Franchise Agreements, cannot compel any claims against it into arbitration. The Court will consider at a later time whether certain claims may be subject to arbitration.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motions to compel arbitration and to dismiss are DENIED. All other motions are MOOT.

cc: Counsel of Record